UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LANCE CARTER,

                              Petitioner,

                                                    **DECISION AND ORDER**
        -v-                                          01-CV-655S

M. McGINNIS, Superintendent,

                              Respondent.


## INTRODUCTION

Petitioner Lance Carter seeks a writ of habeas corpus pursuant to 42 U.S.C. § 2254. Carter alleges that he was: (1) deprived of his right to the effective assistance of counsel when he was misinformed about the consequences of rejecting a plea, (2) deprived of his right to a fair trial due to prosecutorial misconduct, and (3) denied due process when he was convicted of two counts of second degree assault absent sufficient evidence of physical injury to one of the victims.  As discussed below, the Petition must be dismissed.[1]

## BACKGROUND

The relevant facts and procedural history concerning Carter's conviction, sentence and state court applications for post-conviction relief are undisputed.  Carter was confined at the Erie County Correctional Facility from May 28, 1996 to January 13, 1997 (HT. 32[2]; T. 29-30[3]).

---

[1] Petitioner filed the Petition (Docket No. 1), a Reply (Docket No. 9) and Memorandum of Law (Docket No. 10).  Respondent filed an Answer (Docket No. 6), a Memorandum of Law (Docket No. 7) and the records from the Erie County court proceedings.

[2] References preceded by "HT." are to pages of the Huntley Hearing transcript.

[3] References preceded by "T." are to pages of the Erie County court trial transcript dated November 6, 7 and 10, 1997.

On September 11, 1996, Carter's request to use the prison law library was granted (T. 35-36).   Soon after Carter entered the library, Corrections Officer ("CO") Fred Skarupinski observed that Carter and another inmate were engaged in a confrontation, swinging and throwing wooden chairs at one another (T. 38, 242).  CO Skarupinski radioed for a response team and, in an attempt to break up the confrontation, grabbed Carter around the chest and ordered him to stop fighting (T. 38-39, 242).   Instead of stopping, Carter struck CO Skarupinski with a chair and elbow, and punched and kicked him (T. 41-46, 88-89, 242-245).  At some point, Carter told CO Skarupinski that he (Carter) would kill him (T. 41, 292).

As a result of Carter's attack, CO Skarupinski suffered a variety of injuries including bruising and swelling of his face, hand, knee, chest wall and lower back, scrapes to his left arm, right leg and knee, and a bruised kidney which caused blood in his urine (T. 48-56, 90,113-114, 118-120).  CO Skarupinski complained of pain related to those injuries and missed twenty (20) days of work (T. 47, 49-50, 117-120).

On November 10, 1996, Carter was in a courtyard of the Erie County Correctional Facility for a one hour recreation period (T. 126-128, 130, 180, 247).  After he had been outside for approximately twenty (20) minutes, Carter began kicking an outer door located about twenty (20) feet from where CO Craig Duff was completing his end of shift paperwork (T. 127-128, 130, 248-250).  CO Duff heard Carter but continued with his paperwork (T. 128, 249).  Another corrections officer, Ernest Hey, went to the door and let Carter, who did not wish to remain outside for his full recreation period, back in (T. at 129-130, 181, 250).  CO Hey placed Carter in handcuffs and he and CO Duff proceeded to escort Carter back to his cell (T. 129-130, 182, 250-251).

2

Once in handcuffs, Carter began cursing at CO Duff (T. 131-134, 183). As he was being escorted to his cell, Carter stopped, stuck his foot out in front of CO Duff, cursed at him and asked him if he had "anything to say to that" (T. 136, 254). When CO Duff told Carter to keep moving, Carter lunged at CO Duff, knocked him to the ground, bit him in the chest and dug his fingernails into his head and face (T. 136-140, 185-186, 308-309).

As a result of Carter's attack, CO Duff sustained scratches, lacerations, abrasions, bites, bumps on his head, swelling and bruising (T. 141, 211, 216). CO Duff missed two weeks of work, experienced severe pain for approximately one week and was left with permanent scars on his chest and cheek (T. 145-146, 212).

On January 9, 1997, Carter was indicted by an Erie County grand jury for two counts of Assault in the Second Degree, two counts of Criminal Mischief in the Third Degree, Reckless Endangerment in the Second Degree, two counts of Assault in the Third Degree, Criminal Possession of a Weapon in the Fourth Degree, and Harassment in the Second Degree.[4] These nine counts related to incidents occurring at the Erie County Correctional Facility on four separate dates, including the two dates discussed above.

Prior to trial, the defense successfully moved for severance of counts One (assault on CO Skarupinski), Two (assault on CO Duff), Eight (intent to use a solid maple chair as a weapon against CO Skarupinski) and Nine (threatening to kill CO Skarupinski) (PT. 4[5]). A jury trial proceeded on those four counts only (T. 1-412). On November 10, 1997, the jury convicted Carter on each count presented; that is, two counts of Assault in the Second

---

[4]  Erie County Indictment No. 96-2796-001.

[5]  References preceded by "PT." are to the transcript of the trial court's rulings on pre-trial motions dated November 3, 1997.

Degree, Criminal Possession of a Weapon in the Fourth Degree and Harassment in the Second Degree (T. 408-411).

Following the jury verdict, the prosecution filed a Persistent Violent Felony Offender Statement and a hearing was held on that issue on January 13 and 26, 1998.   The prosecution provided two Oneida County certificates of conviction for Carter dated December 12, 1989 and December 17, 1990, respectively (PVFH1. 24[6], Exs 1 and 2).   The December 12, 1989 conviction was based on Carter's plea to assault in the second degree, which is a violent felony (PVFH2. 43-44; N.Y. Penal Law § 70.02(1)(c)).   The December 17, 1990 conviction was based on Carter's plea to a subsequent assault in the second degree (PVFH2. 44-48).   On February 6, 1991, at his sentencing on the 1990 conviction, Carter admitted he was then a Second Violent Felony Offender (PVFH2. 48).

Because Carter's 1997 conviction was his third for violent felony assault within a ten year period, the prosecution argued that the court was required to sentence him as a Persistent Violent Felony Offender (PVFH2. 104).   The defense sought to challenge the constitutionality of the 1990 conviction on the ground that Carter's previous counsel had not informed him of the consequences of his plea to a second violent felony offense and Carter was thereby denied effective assistance of counsel (PVFH2. 103-104).

The trial judge determined that Carter was a persistent violent felony offender and sentenced him to indefinite terms of twelve years to life[7] for each count of Assault in the

---

[6]   References preceded by "PVFH1." are to pages of the persistent violent felony offender hearing transcript dated January 13, 1998, and those preceded by "PVFH2." are to the transcript of the continued hearing on January 26, 1998.

[7]   Pursuant to N.Y. Penal Law § 70.08(2), "[w]hen the court has found . . . that a person is a persistent violent felony offender the court must impose an indeterminate sentence of imprisonment, the maximum term of which shall be life" [emphasis supplied].   The statutory minimum is dependent on the

Second Degree and to lesser terms on the remaining counts, all to run concurrently (ST. 3-6, 20-21[8]).  This was the lowest sentence that could be imposed under the Penal Law.

By Notice dated May 5, 1998, Carter timely appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department ("Appellate Division") (Docket No. 7, Ex. A).  Carter, who was represented by counsel on direct appeal, claimed that:

> (1) the evidence was insufficient to support his convictions for Assault in the Second Degree because the People failed to prove his intent to commit the assaults and failed to prove that CO Skarupinski and CO Duff sustained any "physical injury" within the statutory definition of that term;

> (2) the trial court erred in denying his motion for a mistrial based on statements made by the prosecutor during cross-examination and summation;

> (3) the trial court erred in adjudging and sentencing him as a persistent violent felony offender because his 1990 (Second Felony Offender) conviction was unconstitutionally obtained by reason of ineffective assistance of counsel

> (4) he did not knowingly and voluntarily waive his right to appeal; and

> (5) his sentences are unduly harsh and excessive in light of his long history of mental illness.

(*Id.*, Ex. B).

In or about June 1999, while his appeal was pending, Carter brought a motion, pursuant to N.Y. CRIM. PROC. LAW § 440.10, to vacate the judgment against him on the grounds that: (1) the evidence of "physical injury" was insufficient to support a conviction

---

nature of the crime, with assault in the second degree (the basis for each of Carter's convictions) designated as a class D violent felony offense.  N.Y. Penal Law § 70.02(1)(c).  The minimum sentence for a persistent violent felony offender on a class D felony "must be at least twelve years and must not exceed twenty-five years."  N.Y. Penal Law § 70.08(3)(c).

[8]  References preceded by "ST." are to pages of the sentencing transcript dated February 2, 1998.

for Second Degree Assault with respect to CO Skarupinski; and (2) his predicate convictions (in 1989 and 1990) were not sufficient to support a finding of persistent violent felony offender status in 1998 (Petitioner's Ex. I).

On February 7, 2001, the Appellate Division issued a decision on Carter's direct appeal, affirming the judgment of the trial court in all respects.[9]  People v Carter, 280 A.D.2d 977 (4th Dep't 2001).

On February 20, 2001, the trial court denied Carter's N.Y. CRIM. PROC. LAW § 440.10 motion on the ground that he had raised the same issues in a pending appeal that had yet to be determined and sufficient facts appeared on the record to permit adequate review by the Appellate Division.[10]  N.Y. CRIM. PROC. L. § 440.10(2)(b) (Petitioner's Ex. H).  Carter did not seek leave to appeal the denial of his § 440.10 motion.

Carter did timely seek leave to appeal to the New York Court of Appeals the Appellate Division's affirmation of judgment.  In the letter application for leave, his appellate counsel expressly argued that: (1) the trial court erred in denying Carter's motion for mistrial based on prosecutorial misconduct; and (2) the Appellate Division erred when it determined that the trial court had properly adjudged Carter a persistent violent felony offender (Docket No. 7, Ex. C).  In addition, counsel sought review of all "remaining adverse rulings of the Appellate Division based upon the arguments set forth in appellant's brief" and enclosed a copy of the brief (Id.).  Carter's application for leave to appeal was

---

[9]  The Appellate Division noted that Carter had failed to preserve for review the issue of intent to commit an assault and all alleged instances of prosecutorial misconduct on summation save one.  It then rejected each of Carter's remaining arguments.  280 A.D.2d at 977-78.

[10]  The direct appeal, which was pending when Carter first filed his § 440.10 motion, was decided thirteen days prior to issuance of the decision on his § 440.10 motion.

denied by the Court of Appeals on June 29, 2001.  People v. Carter, 96 N.Y.2d 860 (2001).

On September 17, 2001, Carter timely filed the instant Petition, seeking relief on the

following grounds:

> (1) he was misinformed during the 1997 plea negotiations regarding his criminal history and the consequences of a plea and was thereby denied effective assistance of trial counsel;

> (2) the evidence regarding physical injury or substantial pain is insufficient to sustain his conviction with regard to CO Fred Skarupinski; and

> (3) he was deprived of a fair trial due to the prosecutor's "numerous unwarranted remarks, derogatory comments and insinuations on cross-examination and summation."

(Docket No. 1).  On December 7, 2001 Respondent filed an Answer and a Memorandum

of Law with exhibits and records from the Erie County Court proceedings (Docket Nos. 6,

7).  Respondent urges that Carter did not exhaust his state court remedies with regard to

the ineffective assistance of counsel claim and that the bulk of the alleged instances of

prosecutorial misconduct are procedurally barred (Docket No. 7).  Additionally, Respondent

opposes all claims on the merits (Id.).  Petitioner filed a Reply and a Memorandum of Law

(Docket Nos. 9, 10).

## DISCUSSION

I.    **The Exhaustion Requirement**

Before a federal court can review a state prisoner's habeas petition, the prisoner must exhaust all available state court remedies. 28 U.S.C. §2254(b)(1)(A); see Picard v. Connor, 404 U.S. 270, 275-278, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971). The Supreme Court has made it clear that "the exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

The Second Circuit has adopted a two-step analysis for determining whether a habeas claim is exhausted:

> First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts. . . . Second, having presented his federal constitutional claim to an appropriate state court, and having been denied relief, the petitioner must have utilized all available mechanisms to secure [state] appellate review of the denial of that claim.

Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981) (citations omitted).

To satisfy the first step, a petitioner must fairly present his claim in each appropriate state court, thereby alerting the court to the federal nature of the claim. Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995). Specifically, the petitioner "must have set forth in state court all of the essential factual allegations . . . [and] must have placed before the state court essentially the same legal doctrine he asserts in his federal petition." Daye v. Attorney General of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984) (citations omitted). In Daye, the Second Circuit

8

identified four ways in which a petitioner may "fairly present" a constitutional claim "without citing chapter and verse of the Constitution:" (a) by relying on pertinent federal cases employing constitutional analysis, (b) by relying on state cases employing constitutional analysis in like fact situations, (c) by asserting the claim with such particularity as to call to mind a specific constitutional right, and (d) by alleging a pattern of facts that is within the mainstream of constitutional litigation. *Id.* at 194.

### A.   Ineffective Assistance of Trial Counsel

For the reasons stated below, this Court finds that Carter's claim of ineffective assistance of trial counsel was not fairly presented to the Appellate Division.

In Carter's brief to the Appellate Division, appellate counsel argued that the attorney who represented Carter on his predicate 1990 conviction provided ineffective assistance by failing to inform him of the applicable law and the consequences of his plea—*i.e.*, that after pleading guilty to a second violent felony offense, he could face a mandatory maximum  sentence of life upon the commission of a further violent felony (Docket No. 7, Ex. B, pp. 19-20).  Appellate counsel urged that the showing of ineffective assistance under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) was met and that this rendered the Second Violent Felony Offender plea involuntary, unconstitutional and invalid (Docket No. 7, Ex. B, pp. 20-22).  Because of the purported unconstitutionality of a predicate conviction, appellate counsel claimed that Carter's current sentence as a Persistent Violent Felony Offender is invalid.

At the conclusion of the constitutional argument, appellate counsel stated that

Carter's offender status was "further complicated" in 1997 when his trial counsel[11], the court

and the district attorney all failed to advise him, upon his rejection of a plea offer, that he

could be designated a persistent violent felon should he proceed to trial.   Under these

circumstances, it was argued, Carter's sentence was "patently unfair" and should be

invalidated "in the interest of justice" (Id., pp. 22-25).   In contrast to the argument presented

with respect to Carter's 1990 plea, the 1997 "circumstances" were not alleged to be

unconstitutional, were not alleged to constitute ineffective assistance of counsel and were

not presented as a separate claim.   Carter did not cite to any decisional authority relative

to these allegations.

The Appellate Division read the ineffective assistance claim as relating solely to the

1990 conviction and rejected Carter's contention "that one of the predicate convictions was

unconstitutionally obtained because his lawyer failed to advise him of the potential future

sentence-enhancement consequences of his guilty plea."   Carter,   280 A.D.2d 977

(quotations and citations omitted).

Recently, the United States Supreme Court, in Baldwin v. Reese, 541 U.S. 27, 124

S. Ct. 1347, 158 L. Ed. 2d 64 (2004), had occasion to review the issue of exhaustion on

similar facts.   In Baldwin, Reese sought discretionary review of his conviction in the Oregon

Supreme Court asserting ineffective assistance of both his trial counsel and appellate

counsel.   His state court petition expressly alleged that trial counsel's conduct violated

several provisions of the Federal Constitution, but he made no such assertion with respect

to the alleged ineffective assistance of appellate counsel.   Id. at 29-30.   Reese later raised

---

[11]   Carter was represented by different counsel in 1990 and 1997.

a federal constitutional claim of ineffective assistance of appellate counsel in his habeas petition. *Id.* at 30.

The District Court determined that Reese did not "fairly present" the claim regarding appellate counsel to the state courts because his brief failed to give the state appeals court any indication that he was complaining about a violation of federal law. *Id.* The Ninth Circuit reversed by a divided panel, holding that while the state court petition itself did not alert the state court to the federal nature of the claim, the justices should have realized, upon reading the opinion of the state trial court, that Reese's claim rested upon federal law. *Id.*

In reversing the judgment of the Ninth Circuit, the Supreme Court stated that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim." *Id.* at 32. The Court explained that a litigant "can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'." *Id.*

In the instant case, Carter's appellate brief did not assert any discrete claim against trial counsel, much less cite to any authority or attach any label to the alleged conduct that would fairly present the claim to the appellate division as a federal constitutional issue. Simply reciting factual allegations, absent any legal doctrine or theory, is not sufficient to satisfy the exhaustion requirement. <u>Gray v. Netherland</u>, 518 U.S. 152, 163, 116 S. Ct.

2074, 135 L. Ed. 2d 457 (1996) (*quoting* <u>Picard</u>, 404 U.S. at 277).[12]  State courts are not

expected to consider *sua sponte* whether a constitutional violation has occurred. *Id*.

Because there are no pertinent facts that would distinguish this case from <u>Baldwin</u>,

the Court finds that Carter's claim of ineffective assistance of trial counsel is unexhausted.

**B.     Insufficient Evidence of Injury to CO Skarupinski**

In his brief to the Appellate Division, Carter's counsel advanced substantially the

same claim set forth in his habeas petition regarding CO Skarupinski; that is, the proof of

physical injury to Skarupinski was insufficient to sustain a conviction.  However, the letter

application for leave to appeal to the Court of Appeals, authored by appellate counsel, did

not specifically articulate this claim.  Counsel's letter presented background and authority

on two issues only; the first relating to alleged prosecutorial misconduct and the second to

Carter's persistent violent felony offender designation (Docket No. 7, Ex. C).  Under the

heading "remaining issues," counsel closed by requesting that the Court of Appeals "review

the remaining adverse rulings of the Appellate Division based on the arguments set forth

in appellant's brief" (*Id*.).

Arguing one or more specific claims in a letter and attaching an appellate brief

"without explicitly alerting the state court to each claim raised does not fairly present such

claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction.

Petitioner's counsel has the obligation to set out these arguments.  Counsel may not

---

[12]  This post-<u>Daye</u> decision calls into question <u>Daye's</u> holding that a petitioner may "fairly present" a federal constitutional claim by alleging facts that fall "within the mainstream of constitutional litigation," absent some express reference—no matter how minimal—to a legal theory.  Even assuming <u>Daye's</u> continued validity in this regard, this Court finds that Carter's allegations regarding his 1997 trial counsel, the court and the district attorney do not fall within the mainstream of constitutional litigation.

transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave." Jordan v. LeFevre, 206 F.3d 196, 199 (2d Cir. 2000) (petitioner, whose letter application forcefully argued one claim in three paragraphs and then sought review for "all of the reasons set forth in his Appellate Division briefs," failed to exhaust with respect to all claims not specifically discussed); see also, Grey v. Hoke, 933 F.2d 117, 120 (2d Cir. 1991) (urging consideration of single claim and attaching Appellate Division briefs not sufficient to alert court to other claims); Bailey v. State of New York, 2001 U.S. Dist. LEXIS 7457 at *13-22 (S.D.N.Y.  June 8, 2001) (letter to Court of Appeals that focused on one claim and enclosed Appellate Division briefs not sufficient to exhaust claims not expressly discussed); Mendez v. Artuz, 2000 U.S. Dist. LEXIS 8841 at *83-86 (S.D.N.Y. June 6, 2000) (discussion of why appeal should be granted on one issue, and then a passing reference to other issues in enclosed briefs, does not fairly apprise Court of Appeals of the claims to be reviewed).

Carter's letter application to the Court of Appeals is not sufficient to satisfy the exhaustion requirement with respect to his claim that the evidence against him is insufficient to support a conviction. O'Sullivan v. Boerkel, 526 U.S. 838, 839-40, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999) (prisoner must present his claims to state's highest court in petition for discretionary review in order to exhaust); Grey, 933 F.2d at 119 (petitioner must present federal constitutional claim to state's highest court before a federal court may consider the merits).

13

## II.     Procedural Bar

### A.     The Unexhausted Claims

"'For exhaustion purposes, "a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."'" Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (quoting Grey, 933 F.2d at 120) (quoting Harris v. Reed, 489 U.S. 255, 263 n.9, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989)).  Thus, when a petitioner no longer has remedies available in the courts of the state within the meaning of 28 U.S.C. § 2254(b), the claims are deemed exhausted. Grey, 933 F.2d at 120-21; Reyes, 118 F.3d at 139; Washington v. James, 996 F.2d 1442, 1446-47 (2d Cir. 1993), cert. denied, 510 U.S. 1078, 114 S. Ct. 895, 127 L. Ed. 2d 87 (1994).

In this case, it is clear that the state court would hold Carter's unexhausted claims procedurally barred.  First, Carter is foreclosed from returning to New York's appellate courts with his unexhausted claims.  This is because Carter has already exercised the single opportunity New York law provides for direct review.  N.Y. Court Rules § 500.10(a); see also, Spence v. Superintendent, Green Meadow Correctional Facility, 219 F.3d 162, 170 (2d Cir. 2000); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994).

Secondly, while New York does provide a mechanism for collaterally attacking a judgment entered in violation of constitutional rights, by way of motion pursuant to section 440.10(1)(h) of the Criminal Procedure Law, no relief is available to Carter under this statute.  With respect to Carter's claim of ineffective assistance of trial counsel, he previously filed a § 440.10 motion in which he failed to raise the claim.  Carter cannot now

14

obtain relief by filing another § 440.10 motion.   Under New York law, the state court is required to deny a § 440.10 motion where "[u]pon a previous motion made pursuant to [§ 440.10], the defendant was in a position adequately to raise the ground or issue underlying the [subsequent] motion but did not do so." N.Y. CRIM. PROC. LAW §440.10(3)(c) (McKinney 2005); Diaz v. Mantello, 115 F. Supp. 2d 411, 417 (S.D.N.Y. 2000) (claims that fall within § 440.10(3)(c) are procedurally barred) (citation omitted).

Carter did raise his claim of insufficient evidence in his prior § 440.10 motion, which motion was denied based on the pendency of his direct appeal.   Again, Carter cannot successfully pursue this claim by filing a second § 440.10 motion.   The Appellate Division has already decided the merits of the claim[13] and, under New York law, the state court must deny a § 440.10 motion where "[t]he ground or issue raised upon the motion was previously determined on the merits upon an appeal of the judgment." N.Y. CRIM. PROC. LAW § 440.10(2)(a) (McKinney 2005); Heron v. Coughlin, 94 Civ. 1860, 2003 U.S. Dist. LEXIS 13934 (S.D.N.Y. Aug. 11, 2003) (where, as here, a claim is not completely exhausted on direct appeal, § 440.10(2)(a) constitutes a state procedural bar).

"[I]f a defendant fails to comply with state procedural rules and is barred from litigating a particular constitutional claim in state court, the claim can be considered on federal habeas only if the defendant shows cause for the default and actual prejudice resulting therefrom." Teague v. Lane, 489 U.S. 288, 297-99, 308, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).   A further exception exists where a fundamental miscarriage of justice would result if the federal court does not consider the claim.   Strogov v. Attorney General

---

[13]   As noted above, this claim was not completely exhausted on direct review as Carter did not present the claim to the Court of Appeals.

of the State of New York, 191 F.3d 188, 193 (2d Cir. 1999) (citation omitted). A fundamental miscarriage of justice occurs when, in an extraordinary case, "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 492, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

Carter has not alleged or demonstrated cause for his procedural default or actual prejudice. Moreover, Carter does not claim that he is innocent of the assaults underlying his conviction. Accordingly, Carter's claims of ineffective assistance of trial counsel and insufficient evidence are dismissed as procedurally barred.

### B.    The Exhausted Claim

Carter's claim that he was deprived of a fair trial due to prosecutorial misconduct was exhausted on direct appeal. In his habeas petition, Carter identifies the conduct he is challenging in the most general terms as "the prosecutor's numerous unwarranted remarks, derogatory comments and insinuations on cross examination and summation that [Carter] was a liar" (Docket No. 1). Although Carter has not attempted to identify the offending remarks in any of his submissions, this Court will look to his appellate brief and the trial transcript for guidance.

During the prosecutor's summation, trial counsel made one contemporaneous objection to a statement about the jury sending a message to society (T. 337-38). After the conclusion of summations, counsel moved for a mistrial on the basis of the statement previously objected to and others (T. 354-58). The statement that appears to be at issue here, that Petitioner had an "opportunity to plan his story before he testified," was among those not objected to during summation but later urged as a basis for mistrial (T. 344). Trial

counsel characterized this statement as "an accusation of lying" (T. 356). The motion for mistrial was denied (T. 361).

On appeal, Petitioner claimed that the trial court erred in denying his mistrial motion. The Appellate Division determined that the prosecutor's summation statement relating to Carter's credibility was not preserved for the court's review by timely objection and expressly declined to consider the merits.[14]  Carter, 280 A.D.2d at 978; see People v. Bierenbaum, 301 A.D.2d 119 (1st Dep't 2002), lv. denied, 99 N.Y.2d 626 (2003), cert. denied, 540 U.S. 821, 124 S. Ct. 134, 157 L. Ed. 2d 40 (2003) (motion for mistrial made at conclusion of summations did not preserve claims of prosecutorial misconduct in summation); People v. Valez, 256 A.D.2d 135 (1st Dep't 1998), lv. denied, 93 N.Y.2d 879 (1999) (same).

An unequivocal determination that a claim is unpreserved for appellate review serves as a procedural default.  Harris, 489 U.S. at 260-64; Rodriguez v. Schriver, 392 F.3d 505, 511 n.10 (2d Cir. 2004); Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999) (New York's contemporaneous objection rule is an adequate bar to federal habeas review). Where, as here, a state court decision rests on an adequate and independent state procedural default, this Court may not review the decision unless Carter can show both cause and prejudice or a fundamental miscarriage of justice.  Fama v. Commissioner of Correctional Servs., 235 F.3d 804, 809 (2d Cir. 2000) (citing Coleman v. Thompson, 501 U.S. 722, 749-50, 111 S. Ct. 2546, 115 L. Ed. 2d 308 (1991); Harris, 489 U.S. at 262)).

---

[14] The Appellate Division determined that only one of the three summation comments identified as the basis for Carter's claim was preserved for appeal by timely objection. Although that court's decision does not specify which of the three statements it considered on the merits, that is readily ascertainable from a review of the trial transcript, as noted above.

As Carter has not alleged or demonstrated the existence of any circumstances warranting this Court's review, the portion of his prosecutorial misconduct claim that relates to summation is not subject to review on the merits.

**III.     The Merits**

The portion of Carter's prosecutorial misconduct claim that is exhausted and not otherwise barred relates to the prosecutor's "numerous remarks, comments and insinuations" on cross-examination that Carter was a liar (Docket No. 1).  Again, the Court assumes for purposes of this review that the objectionable statements are the same as were identified to and ruled upon by the Appellate Division.  They consist of the prosecutor asking "you want this jury to believe [Carter's testimony] " (T. 260, 270, 287, 303 ), "are you telling this jury here that . . ." (T. 290, 293, 294) and "are you suggesting that the [victim and witness] is [sic] incorrect too" (T. 309).

In each instance, trial counsel objected to the phrasing of the question, the judge sustained each objection and, in all but two instances (T. 290, 294), the judge immediately directed the jury to disregard the question.  When the court later questioned trial counsel regarding the basis for his mistrial motion, counsel conceded that the prosecutor did not ever "come out and say that [Carter is] a liar" (T. 356).  Even so, the trial court went on to give a further curative instruction to the jury regarding certain of the prosecutor's statements and the People's burden of proof at trial (T. 364-65).

To succeed on a claim of prosecutorial misconduct, a petitioner must demonstrate that the prosecutor engaged in "egregious misconduct . . . amount[ing] to a denial of constitutional due process."  Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (citation

and quotation omitted).   The question before the reviewing court is whether "the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1974).  Mere impropriety will not meet this standard.  Rather, the prosecutor's remarks must have been "so prejudicial that they rendered the trial in question fundamentally unfair."  Floyd, 907 F.2d at 355 (citation and quotation omitted). In assessing whether prosecutorial misconduct caused substantial prejudice, the Second Circuit has adopted a three-part test examining: (1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the certainty of conviction absent the misconduct.  United States v. Elias, 285 F.3d 183, 190 (2d Cir. 2002).

Having carefully reviewed the prosecutor's cross-examination of Carter and the Appellate Division's decision in this regard, this Court finds no basis for reversal.  The Second Circuit has stated, more than once, that the "[u]se of the words 'liar' and 'lie' to characterize disputed testimony when the witness's credibility is clearly in issue is ordinarily not improper unless such use is excessive or is likely to be inflammatory." United States v. Peterson, 808 F.2d 969, 977 (2d Cir. 1987) (citation omitted); accord United States v. Shareef, 190 F.3d 71, 79 (2d Cir. 1999) ("it is not ordinarily improper for the prosecution to make temperate use of forms of the word 'lie' . . . to characterize disputed testimony where credibility was clearly an issue, particularly where the prosecutor tied to the pertinent evidence of record each instance in which the defendant supposedly 'lied'") (internal quotation marks and citation omitted).

Here, the prosecutor did not use any form of the word 'lie,' but did phrase his questions in a manner that indicated his incredulity at Carter's testimony relative to the

prosecution's evidence.  Beyond that, the prosecutor's questions were not accompanied by intemperate or inflammatory remarks that posed a likelihood of appealing to the jury's emotions rather than its reason.  In short, the prosecutor's questions themselves did not, in this Court's view, implicate federal due process.

Moreover, as the Appellate Division correctly noted, the trial judge "sustained defendant's objections [to each statement at issue] and gave prompt curative instructions to the jury." Carter, 290 A.D.2d at 978.  Finally, in light of the trial evidence, including Carter's admission that he elbowed, punched and kicked CO Skarupinski (T. 243) and was involved in a struggle with CO Duff and "might have" bitten him (T. 308), this Court cannot conclude that the prosecutor's questions had the effect of rendering Carter's assault conviction substantially more likely.  Accordingly, Carter's prosecutorial misconduct claim is denied.

## CONCLUSION

For the reasons stated, Carter's Petition is denied in its entirety.

Because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the Court concludes that petitioner has failed to make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), and accordingly the Court denies a certificate of appealability.

The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed. 2d 21

(1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

## ORDER

IT HEREBY IS ORDERED, that the Petition (Docket No. 1) is DISMISSED.

FURTHER, that a certificate of appealability is DENIED.

FURTHER, that leave to appeal as a poor person is DENIED.

FURTHER, that the Clerk of this Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated: July 29, 2005
       Buffalo, New York

WILLIAM M. SKRETNY
United States District Judge